GARWIN *v.* ANDERSON.

1. CORPORATIONS—CONSENT TO ASSIGNMENT OF UNDERWRITING CONTRACT FOR SALE OF STOCK—FIDUCIARY DUTY.

Directors' and officers' consent to assignment of contract for sale of stock of defendant corporation, engaged in manufacturing airplane parts for the Federal government, from underwriter corporation to underwriter partnership constituted no betrayal of interests of defendant corporation, where default under underwriting agreement as altered prior to assignment was not shown so as to give defendant corporation right to cancel its agreement and sell its stock at then substantially higher price as disclosed by record of stock exchange transactions.

2. SAME—PLEDGE OF STOCK FOR LOAN TO UNDERWRITER.

Consent by defendant directors and officers of defendant corporation to pledge of its stock for loan to underwriter did not constitute a breach of their fiduciary duty, where corporation was engaged in manufacturing airplane parts for the Federal government, had been required to eliminate certain persons as stockholders as a condition precedent to further contracts which were essential to the corporation's survival, and made an agreement with an underwriter for disposal of such stock, and as a result of the pledge the corporation received payment for the stock in amount corporation paid for it with safeguards for keeping the stock from falling into hands objectionable to the Federal government.

3. SAME—OFFICERS' SALARIES—COMPROMISE.

Action of directors and officers of defendant corporation in compromising and settling claims of president and man-

REFERENCES FOR POINTS IN HEADNOTES

[5, 6] 13 Am Jur, Corporations §§ 1036; 1039.

Court's right to interfere with amount of salaries voted to officers of private corporations by directors. 27 ALR 300. 44 ALR 570.

Participation by corporate director in vote or meeting fixing compensation for his own services. 175 ALR 577.

ager of parachute division for salaries based in part on percentage of net profits did not constitute an actionable breach of fiduciary duty, where there was a genuine dispute as to whether net profits should be computed before or after renegotiation of contracts with the Federal government and the legal rights of the parties were in serious doubt.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE—ACCOUNTING—CORPORATE OFFICERS' SALARIES—EVIDENCE.

Consideration of claim in suit for accounting as to payment of excessive salaries only to president of defendant corporation is made, where there is no proof as to payment of any specific amount to any of the other officers involved or the number of persons to whom a total amount was paid.

5. CORPORATIONS—COMPENSATION OF DIRECTORS—BURDEN OF SHOWING REASONABLENESS.

The burden of proof is on directors of a corporation who have fixed their own compensation for services to the corporation to establish the reasonableness of the sum paid when such matter is called into question in a stockholders' derivative suit, unless the majority of those voting on the question are disinterested.

6. SAME—SALARY OF PRESIDENT—BURDEN OF PROOF.

Action of board of directors in setting salary of defendant president, not a director, not shown to have been accomplished by defendant or upon the vote of any individual benefited is assumed to be valid until person attacking it has sustained his burden of establishing unreasonableness of compensation.

7. SAME—COMPROMISE AND SETTLEMENT OF CREDITOR'S CLAIM.

Stockholder who complained of action of defendant officers and directors of defendant corporation whereby they had settled a creditor's claim for compensation for alleged commissions *held*, not to have sustained burden of proving that defendants had acted recklessly or breached their fiduciary duty in effecting the compromise and settlement of a claim, where conclusion of corporation's comptroller that there was an amount due somewhat less than amount paid and that creditor claimed an amount considerably in excess of sum paid was not shown to have been inaccurate.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 3, 1952. (Docket No. 15, Calendar No. 45,325.) Decided September 3, 1952.

Bill by Esther Garwin against Archie A. Anderson and others, directors and officers of defendant Hayes Manufacturing Company, for an accounting as to corporate funds. Moe Greisman intervened as party plaintiff. Bill dismissed. Plaintiff and intervenor appeal. Affirmed.

*Karbel & Eiges* (*Sidney L. Garwin* and *Norman Annenberg,* of counsel), for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy* (*Frank D. Eaman* and *A. H. Williams,* of counsel), for defendants.

Dethmers, J. This is a stockholders' derivative suit brought against corporate directors and officers to recover for alleged breach of fiduciary duty in the following respects: (1) Sale of stock of the corporation at less than market price; (2) compromise settlement of excessive bonus claims of the corporation's president and another; (3) payment of excessive salaries to corporate officers; (4) compromise settlement of excessive commission claims of a creditor. From decree for defendants dismissing plaintiffs' bill of complaint the latter appeal.

In 1943 defendant corporation, hereinafter called Hayes, was engaged in manufacturing aircraft parts for use by the United States government. A fractional interest in Hayes, to-wit, 100,000 shares of its $2 par value common stock, was owned by 3 persons who were objectionable to the war department because they had violated the Federal neutrality act.* The government required their elimination

---

* See 54 Stat 4 *et seq.* (22 USCA, § 441 *et seq.*).—Reporter.

as stockholders as a condition precedent to granting further contracts which were essential to Hayes' survival. Attempts to find purchasers for the stock proved fruitless. Finally, on December 21, 1943, in order to satisfy the war department, Hayes, under authorization of its directors, purchased the stock with corporate funds for $200,000. This left its capital structure correspondingly impaired. The directors deemed it essential to successful operations that the stock be resold at once so that the sum used for the purchase might be restored immediately to working capital. Not only had all previous efforts to find a market failed, but, likewise, potential underwriters and brokers had been solicited without success, due, in all probability, to Hayes' consistent record of losses in operations and the fact that no dividends had been paid since 1929. On 3 previous occasions, under similarly difficult circumstances, one A. W. Porter, a New York dealer in stocks and securities, had underwritten and been surprisingly successful in marketing Hayes stock when the company had been in need of money. Although they had not ascertained his financial strength, defendants had reason to and did repose confidence in his integrity, business acumen and ability as an underwriter to move such stock and obtain the desired proceeds for Hayes. He was contacted and an attempt made to interest him in the stock at $2.50 per share. He was not interested at a price greater than $2 per share. There is no showing that the 100,000 shares could have been sold at that time for more. Every fair inference from the record is to the contrary. On December 21, 1943, Hayes sold the 100,000 shares at $2 per share to A. W. Porter Associates, Inc., a corporation controlled by Porter, as underwriter, for distribution to the public. Payment was agreed to

be made in stipulated instalments and Hayes retained the stock as security.

On March 16, 1944, the agreement was modified and extended in relation to instalment due dates by a new agreement under which the stock was sold, as of that date, for distribution to the public, to the Porter corporation for $200,000, but retained by Hayes as security for performance of the contract and payment of the purchase-price promissory note due on or before 8 months from date thereof. The latter agreement provided that public distribution of the stock by the underwriter should be begun within 240 days and completed within 300 days in any 1 or more of the following methods, that is: "(a) A public offering, (b) sale thereof upon the New York Stock Exchange, and (c) such other method as shall be approved in writing by Clark (Hayes' president) in advance." Hayes was empowered to cancel if the Porter corporation defaulted in payment of the note or in performance of its obligations under the contract.

The Porter corporation was not licensed as an underwriter, but at the time of the agreement it was contemplated that it would register as a dealer. Subsequently, as appears from minutes of a meeting of directors of the Porter corporation, the latter was advised by counsel that it was inadvisable for it to secure registration as a dealer and it was concluded to take out registration in the name of A. W. Porter & Company, a partnership, of which A. W. Porter was a partner (testimony was to the effect that a more favorable income tax status could thus be effectuated). Accordingly, on June 26, 1944, on which date such shares were bringing over $4 per share on the market, the underwriting agreement was assigned by the Porter corporation to the Porter partnership with the written consent of Hayes' president.

On July 11th defendants permitted the 100,000 shares to be delivered to a bank as security for a $200,000 loan to the Porter partnership, whereupon the proceeds were paid forthwith to Hayes as purchase price of the stock. A pledge agreement was signed by the bank, the Porter partnership and Hayes, which provided for release by the bank to the partnership of such pledged shares as it might from time to time sell, upon payment to the bank of $2 for each share so released; further, that Porter partnership should sell at least 30,000 shares within 60 days and upon default therein and notice by the bank to Hayes, the latter might exercise an option to pay the bank and recover the shares. On September 9th, when the 60 days had expired, no shares had been sold by the partnership. The bank did not elect to treat this as a default or to exercise its rights under the pledge agreement to sell the stock, but, on the contrary, appeared to waive it and, consequently, served no notice of default on Hayes. At that time Hayes' shares were of a value of $6.50 per share on the New York stock exchange.

Plaintiffs claim defendants breached their fiduciary duty as relates to sale of the stock in 3 respects: (1) Consenting to assignment from the Porter corporation to the Porter partnership at a time when such shares were bringing considerably more than $2 per share on the market; (2) permitting the stock to be pledged to the bank as security for a loan to Porter partnership; (3) failure to retake the stock after September 9th upon Porter partnership's failure to have sold 30,000 shares to the public.

Plaintiffs' claim concerning the assignment is predicated on the theory that the Porter corporation was then in default on its contract with Hayes and could not carry it out because it was not and could not be licensed as a dealer so as to function

as an underwriter; that, therefore, Hayes then could have cancelled the agreement with Porter corporation and retaken the stock, worth over $4 per share on the market, and that defendants' failure so to do and to obtain the market price on the shares constituted a waste of corporate assets and, hence, a breach of fiduciary duty. Plaintiffs failed to establish the default and corresponding right of Hayes to terminate the contract and retake the stock as of June 26th, the date of the assignment. Under the March 16th agreement the Porter corporation had 240 days to initiate and 300 days to complete distribution of the shares to the public. Lack of a dealer's license on June 26th constituted no breach or default. There is no showing that Porter corporation could not have obtained a license. Even if it had been established that Porter corporation could not have obtained such license, the fact remains that, under the terms of the agreement, it could have disposed of the stock on the New York stock exchange, through some member thereof, thus obviating the need of a dealer's license on the part of Porter corporation. The latter had a right, under the contract, to assign it with the approval of Hayes' president. There was no right in Hayes at that time to cancel or terminate the agreement or to retake the shares and consent to the assignment is in nowise shown to have constituted a betrayal of Hayes' interests.

Prior to and at the time the stock was pledged Hayes had but 2 interests therein or objectives in relation thereto: The first, receipt of payment therefor, and, second, that it be distributed to persons not objectionable to the war department. When the stock was pledged Hayes received payment in full simultaneously. The pledge agreement contained safeguards against the eventuality of the stock falling into objectionable hands. The trans-

action is not shown to have defeated either. one of the two interests of Hayes sought to be secured by the underwriting agreement. The provision in the pledge agreement for sale of 30,000 shares within 60 days after July 11th was intended for the protection of the bank, being more rigid in its requirement than the provisions of the agreement between Hayes and Porter corporation. Failure to sell the 30,000 shares within 60 days was not treated as a default by the bank, no notice of default was served by the bank upon Hayes, and, hence, the eventuality against which Hayes was to be protected under such circumstances, namely, indiscriminate sale, upon forfeiture, by the bank, so that the shares might have fallen into hands objectionable to the war department, never occurred. In consequence, the right did not accrue to Hayes on September 9th or thereafter to pay the bank and retake the stock. Plaintiffs have failed to establish a breach of fiduciary duty by defendants in this respect.

The next claim of breach relates to defendants' compromise settlement of bonus claims of the corporation's president and of the manager of its parachute division. Under contracts of employment entered into as of December, 1940, and March of 1942, respectively, each was entitled to a stipulated salary and, in addition, to a bonus to be determined by specified percentages of net profits. Later, congress enacted the renegotiation act of 1942.* Thereafter dispute arose as to whether the bonuses should be computed on the basis of net profits before or after renegotiation. Ultimately a compromise settlement was concluded with both. Plaintiffs cite cases from other jurisdictions in support of their contention that the computations should have been

_____

* See 56 Stat 244 et seq.; 982 et seq. (50 USCA, App, § 1191 et seq.).—REPORTER.

on the basis of net profits after renegotiation. The trial court, relying upon *Gee* v. *Olson,* 320 Mich 274, ruled that the computation should not have been affected by renegotiation. While the latter case is not directly in point, its implications might be viewed as favorable to the trial court's position. We need not determine, however, on which of the 2 bases the computation should have been made. At all events, a genuine dispute existed, with the legal rights of the parties in serious doubt. Under such circumstances, we cannot hold that the action of defendants in compromising and settling the claims constituted actionable breach of fiduciary duty.

Plaintiffs complain of payment of excessive salaries to the corporate president and other officers, and present a set of figures representing salaries paid to the president individually and another set representing totals paid to all officers and directors without itemizing or indicating the number of individuals involved or the amounts paid to each. Having failed to establish the payment of any specific amount to any of the officers or directors other than the president, we need consider only the claim as relates to salary paid him. No proofs were offered by either side to establish what would have amounted to reasonable and proper compensation. Plaintiffs rely on *McKey* v. *Swenson,* 232 Mich 505, for the proposition that the burden rested upon defendants to establish the reasonableness of the compensation. Defendants urge that under *Wiseman* v. *Musgrove,* 309 Mich 523, the burden rested upon plaintiffs to establish the unreasonableness thereof. Reading of the 2 cases and of 2 others therein cited, namely, *Nahikian* v. *Mattingly,* 265 Mich 128, and *Miner* v. *Belle Isle Ice Co.,* 93 Mich 97 (17 LRA 412), discloses that the rule imposing the burden of proof on defendants is applicable in

cases where the action of the directors in fixing their own compensation is held void for the reason that it was accomplished by the vote of those benefiting thereby. As said in the *Miner Case* (p 110):

"All the authorities agree that it is essential that the majority of the quorum of a board of directors shall be disinterested in respect to the matters voted upon."

In the instant case the president was not a director and played no official part in the fixing of his salary. It was not shown that the fixing of salaries of other officers or directors was in any instance accomplished by or dependent upon the vote of the individual thereby benefited. Accordingly, the case presents a situation in which the action in question was not void as in the *McKey Case,* but is comparable to that in the *Nahikian Case,* in which this Court said, as later quoted with approval in the *Wiseman Case,* the following:

"In *McKey* v. *Swenson,* 232 Mich 505, we held action in fixing salaries wholly void and cast the burden upon the officers to give the court information upon which reasonable compensation could be fixed. Such, however, is not the case at bar, for here we do not have wholly void action but only assertion of unreasonable compensation and the burden is on plaintiff to establish the charge."

Plaintiffs failed to establish a case in this regard.

Finally, plaintiffs complain of defendants' settlement of a creditor's claim for alleged commissions due, under a contract, on business obtained for Hayes. Plaintiffs present an analysis of Hayes' books purporting to show nothing was then due the creditor. Hayes' comptroller's analysis was to the contrary, showing a sum due somewhat less than the compromise settlement, while the creditor claimed an amount considerably in excess thereof.

We are not satisfied on the entire record that plaintiffs have established the accuracy of their own and inaccuracy of the comptroller's conclusions from the figures contained in Hayes' books.   Under all the facts established by the record, it cannot be said that plaintiffs have sustained the burden of proving that defendants acted recklessly or breached their fiduciary duty in effecting the compromise and settlement.

Affirmed, with costs to defendants.

BUTZEL, CARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.