ADOLPH T. BERGER et al., appellants, v. AMANA SOCIETY et al., appellees-cross-appellants.

No. 51623.

(Reported in 135 N.W.2d 618)

June 8, 1965.

958

Swift & Swift, of Marengo, Edward J. Von Hoene, of Williamsburg, and Messer & Cahill, of Iowa City, for appellants Adolph T. Berger et al.

David G. Bleakley, Harold D. Vietor and Shuttleworth & Ingersoll, all of Cedar Rapids, for appellees-cross-appellants Amana Society et al.

D. C. Nolan, of Iowa City, for intervenors-appellees and cross-appellants.

GARFIELD, C. J.—Plaintiffs, minority Class A stockholders in defendant Amana Society, Inc., and their attorneys applied to the district court for an allowance of attorney fees and reimbursement for the attorneys' expenses in prosecuting a stockholders' derivative action against the corporation, its officers and directors. Following trial in equity an allowance was made from which applicants have appealed and defendants and intervenors, who joined with defendants, have cross-appealed.

These appeals are the fourth taken to this court in the action referred to. The first appeal was from an adjudication of law points under rule 105, Rules of Civil Procedure. Berger v. Amana Society, 250 Iowa 1060, 95 N.W.2d 909, 70 A. L. R.2d 830. The second was from the district court's decision following trial on the merits. Idem, 253 Iowa 378, 111 N.W.2d 753. The third was from the judgment and decree implementing the two prior opinions, supra. 254 Iowa 1036, 120 N.W.2d 465.

Before 1932 Amana Society existed as a nonprofit corporation under Iowa laws. In that year it was organized as a corporation for profit. The corporate charter was renewed in 1952 with somewhat, but not greatly, different provisions regarding capital stock. Two thousand shares of Class A stock were authorized, each of a par value of $50. This renewed charter provided that when a holder of Class A stock desired to sell or, if he died or removed from the corporate property, the stock must be offered to the corporation which "shall purchase and pay for

the same at the true value thereof within 30 days from the date the stock is so tendered." No one could hold more than one share of Class A stock and it could be issued only to members of the former Society or their heirs.

The stockholders adopted an amendment to the 1952 charter on December 12, 1955, which radically changed the stock structure by authorizing issuance of 300,000 shares of Class B common stock of a par value of 50 cents each. The Class A stock was changed to 100,000 shares also of the par value of 50 cents each. Each share of Class A stock outstanding on December 12, 1955, was changed into 100 shares.

The 1955 amendment also radically changed the manner the corporation must pay for shares of Class A stock when tendered or upon death or removal of the holders. Instead of payment by the corporation at true value of the stock, the holder must accept an equal number of shares of Class B stock at a par value of 50 cents a share. Holders of Class B stock were given equal rights with Class A shareholders in rights to vote, receive dividends and distribution of assets.

We held upon the first appeal, supra, the corporation could not issue additional stock which impaired the contract rights of nonassenting stockholders to have their shares redeemed at their true value. Upon the second appeal, after trial on the merits, we held the directors of the corporation did not fully and fairly disclose to the stockholders the effect of the 1955 amendment and it should be held inoperative at least until adopted by the stockholders after being fully and fairly informed thereon.

Following the trial on the merits the district court held fees for plaintiffs' attorneys could be allowed only for services on the first appeal, reserving for future hearing proof as to their value. Plaintiffs urged it was error not to allow fees for the entire case; defendants asserted error in the allowance of any fees. Because it is important upon the present appeal we quote the following portion of our opinion on the second appeal dealing with the question of attorney fees (pages 387, 388 of 253 Iowa, page 758 of 111 N.W.2d):

"*This action is clearly a stockholders' derivative action* brought for the purpose of preserving two heretofore funda-

mental attributes of corporate structure, or in fact, one attribute—the keeping of the corporation a close one, by confining all corporate control in hands of members of the instant religious belief, by making Class A stockholders the speaking representatives of the faithful. While it is true the contractual right to cash redemption amounts to a benefit for the recipients thereof, of more or at least of equal importance is that, by this means, control remains in the hands of the members of the religious group. That this has been a matter of prime importance to the Society, from the start thereof down to at least 1952 cannot seriously be denied. It still appears to be a prime corporate attribute, at least in the eyes of some stockholders.

"The legal questions involved in the allowance of attorney fees in actions of this kind are fully and clearly set forth in State ex rel. Weede v. Bechtel, 244 Iowa 785, 56 N.W.2d 173, and authorities therein set forth. See also Bosch v. Meeker Coop. L. & P. Assn., 257 Minn. 362, 101 N.W.2d 423.

"The trial court recognized plaintiffs' right to attorney fees for services in the interlocutory appeal even though it nullified the results thereof. Those, this court is now restoring and, in addition, has granted further relief by nullifying the Amendment in toto and thereby reserving the corporate control in hands of the Class A stockholders. *The amount of fees allowable depends upon the substantial benefit gained by the corporation or its stockholders and the time and skill of the attorneys*. This is a matter for the trial court to take testimony upon and determine" (emphasis added).

Of course our prior opinions, supra, are the law of the case upon this appeal. Berger v. Amana Society, 254 Iowa 1036, 1038, 1040, 120 N.W.2d 465, 466, 467.

After hearing testimony for five days in support of the application for fees and the resistance to it, the trial court found no substantial or economic benefit was gained by the corporation or its stockholders by this litigation and that nothing could be allowed the attorneys upon the theory of such benefits. However, the court concluded the part of our second opinion quoted above established that the attorneys were entitled to some fees and the amount thereof depended on their time and skill.

The court allowed $15 per hour for the time of Mr. (now district judge) Hamilton, Mr. Cahill, who succeeded Judge Hamilton in the same firm, and Mr. Von Hoene. Only $12 per hour for Mr. Swift was allowed because he was hard of hearing and in semiretirement during much of the eight- to nine-year period since he was consulted on behalf of plaintiffs. The court also allowed the combined attorneys an additional $1500 for the three days trial on the merits in the district court and a like additional sum for the three appeals to this court.

The trial court also allowed an additional $200 a day each ($2200 in all) to Mr. Von Hoene and Mr. Cahill for the five and one-half days devoted to trial of this application. Total allowed for fees was $59,341. Claimed expenses of $1351 were also allowed the attorneys.

Upon this appeal applicants contend it was error to find the corporation or its stockholders were not benefited by this litigation. They also think the trial court permitted defendants and intervenors to relitigate matters decided adversely to them upon prior appeals to us.

Defendants' and intervenors' cross-appeals challenge the allowance to Mr. Swift as unreasonably large. They also assert no added allowance should have been made for the trial on the merits or the prior appeals to us. Also that nothing should have been allowed for time spent on this claim for fees. They would reduce the allowance for fees by at least $14,728, to not more than $44,613.

Our review is de novo. Rule 334, Rules of Civil Procedure. We give weight to the fact findings of the trial court but are not bound by them. See rule 344(f)7, R. C. P.

■ I. We cannot agree no substantial benefit was conferred on the stockholders as a class by this litigation.

As the first of our prior opinions points out, 652 shares of Class A stock were outstanding when this suit was commenced. Under the 1955 amendment, held invalid, 100 shares of new Class A stock would be issued to each holder of one share, 65,200 shares in all. As against this, 300,000 shares of Class B stock were authorized. "It is evident that the Class A shareholders, who have heretofore had the sole voting rights, may now be out-

voted by a large majority, nearly five to one. It is also evident that, since the Class B stock will share equally in dividends and distributive rights, the value of the Class A stock has been very materially reduced" (page 1065 of 250 Iowa, page 912 of 95 N.W.2d).

Our opinion upon the second appeal expressly holds that nullifying the 1955 amendment reserved to the Class A shareholders control of the corporation (page 388 of 253 Iowa, page 758 of 111 N.W.2d). Our third opinion confirms this holding (page 1041 of 254 Iowa, page 468 of 120 N.W.2d).

Under the 1955 amendment the corporation could issue to outsiders for as little as 50 cents per share all the 300,000 shares of Class B stock except 65,200 shares which would go to the Class A shareholders. Thus 234,800 B shares could be sold to new shareholders for a total price payable to the corporation of only $117,400. So in a sense approximately 78 percent of the assets of the corporation could be sold to outsiders for only $117,400.

There is much basis for finding the true value of the 652 Class A shares was as much as $10,000 per share at the time this action was commenced. (It would be $100 per share after the proposed 100-to-one split.) There is evidence such value was as much as $15,000. If the former figure is accepted, nullification of the 1955 amendment prevented at least the possibility that corporate assets of a true value of about $5,000,000 would be held by outsiders and the corporation would receive as little as $117,400 from the transaction.

It is true the power the amendment would confer on the corporation to do what is just stated might not have been exercised. Issuance of Class B stock and the price to be paid for it must be determined by two-thirds vote of the Class A and B stock. Also each A and B stockholder was to have a preemptive right, for a reasonable time fixed by the directors, to purchase his pro rata share of any B stock to be sold. But the officers and directors who were instrumental in formulating the 1955 amendment and seeking its adoption seem to have been quite determined in their defense of it. If there were no thought of exercising the power therein conferred, no good reason is apparent why the corporate

charter should be thus amended. Invalidation of the amendment prevented what appears to have been a substantial chance the Class A stock would be greatly reduced in value by exercise of the power therein conferred to issue B stock.

It cannot be denied that the right of each Class A stockholder to have his stock redeemed at its true value within 30 days from the date of its tender to the corporation is a valuable right belonging to every stockholder. The amendment would have taken this right from all Class A shareholders and substitute for it the right to receive Class B stock of the par value of 50 cents per share. Preservation of the original right of redemption by this litigation is certainly a substantial benefit to every stockholder. And there is reason to conclude that an adjudication which requires a corporation to honor an important long-standing contractual obligation to its shareholders is a benefit to the corporation itself as well as to the shareholders.

It clearly appears and the trial court recognized that before this litigation the corporation's directors were redeeming stock tendered to it at its book value which was much less than its true value. It was a benefit to the shareholders as a class to have this fact brought out by this litigation and have it adjudicated that the corporation's obligation under its charter was to redeem the stock at true value. For the meaning of such terms as actual, true, fair or real value of corporate stock under statutes requiring its purchase at such value see Robbins v. Beatty, 246 Iowa 80, 91, 92, 67 N.W.2d 12, 18, 19, and citations; Woodward v. Quigley, 257 Iowa 1077, 1081, 133 N.W.2d 38, 40.

Our second opinion in this case (253 Iowa 378, 387, 111 N.W.2d 753, 758) holds, "This action is clearly a stockholders' derivative action * * *." Plaintiffs were successful in the three prior appeals in obtaining the relief sought. The holding this is clearly a stockholders' derivative action and the fact it was successful imply a substantial benefit to the corporation or the shareholders as a class therefrom.

"An action brought by a stockholder is derivative if the gravamen of the complaint is injury to the corporation or to the whole body of its stock or property and not injury to the plain-

tiff's individual interest as a stockholder." 19 Am. Jur.2d, Corporations, section 528. See also Idem, section 532.

Indeed defendants admit in argument "It would appear this court in [its second opinion] * * * believes that the contractual right of Class A stockholders to have their stock redeemed for cash was a substantial benefit * * *."

The burden of defendants' argument, which the trial court accepted, is that exercise of the shareholders' right to have their stock redeemed at its true value results in a drain on the corporation's funds which are needed in its business and a gradual liquidation of the corporation and that nullification of the amendment, designed to abrogate such right of redemption, was a detriment to the corporation and its shareholders rather than a benefit.

It may be conceded performance of this obligation under its charter takes money of the corporation. It takes money to pay most financial obligations. But we cannot agree it was a detriment to the corporation and its stockholders to have it adjudicated that the method proposed here to avoid performance of the obligation to redeem was illegal and its adoption was procured by inequitable conduct of its directors. If the obligation of the charter to redeem stock at true value is to be changed it must be accomplished by a legal method, legally adopted.

Any drain on the corporate treasury from the redemption of stock at true value would be obviated by sale of an equal amount of stock at such value. There is no reason to conclude this litigation has prevented such sale of stock.

Some A shareholders expressed the opinion at the hearing on attorney fees that the litigation was a detriment, not a benefit, to the corporation and its shareholders. This is understandable. Contrary testimony would be to their financial disadvantage in that a finding of benefit to either the corporation or its shareholders would increase the allowance of fees.

II. Under the part of our opinion on the second appeal heretofore quoted, the amount of attorney fees allowable depends upon the substantial benefit to the corporation *or* its stockholders and the time and skill of the attorneys. We have tried to point out the stockholders as a class were substantially benefited

in several important respects. Also that the corporation itself was benefited in at least some of these respects, particularly prevention of the chance that equitable ownership of as much as 78 percent of the corporation could go to outsiders for as little as $117,400, a small fraction of its value. Of course control of the corporation could go to outsiders through the issuance of B stock to them regardless of the price the corporation received for it. Some of these benefits, including that just mentioned, are pecuniary in nature even though no fund was created thereby and it may be difficult to compute their actual value in money.

It is to be noted, however, nothing in our second opinion requires the benefits therein referred to, gained by the corporation or its shareholders, to be pecuniary. On the contrary, the opinion cites with obvious approval Bosch v. Meeker Coop. L. & P. Assn., supra, 257 Minn. 362, 101 N.W.2d 423, a leading precedent for the proposition that substantial benefits to the corporation or its stockholders from a derivative action may be nonpecuniary.

The Bosch opinion holds (at page 366 of 257 Minn., page 427 of 101 N.W.2d), "* * * a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment *or protection of an essential right to the stockholder's interest*" (emphasis added).

Gilbert v. Hoisting & Portable Engineers Local Union No. 701, 237 Ore. 130, 137, 138, 384 P.2d 136, 139, 140, certiorari denied 376 U. S. 963, 84 S. Ct. 1125, 11 L. Ed.2d 981, states: "Defendants contend, however, that attorney fees are allowed in such cases only if the prosecution of the suit results in a pecuniary benefit. Although there is authority supporting defendants' contention, more recent cases have permitted recovery where there was a non-pecuniary benefit to the corporation. We believe that these recent cases announce the sounder rule."

The annotation in 39 A. L. R.2d 580, 587, says: "With few exceptions, attorneys' fees and other expenses incurred by successful litigants, and in some instances by unsuccessful litigants, in actions involving the internal affairs of a corporation, but

wherein no pecuniary recovery was sought, have been charged against the corporation."

Volume 19 Am. Jur.2d, Corporations, section 589, page 113, says the rule just quoted has been applied in some instances. Among the authorities cited for the statement are Bosch v. Meeker Coop. L. & P. Assn., supra, and our opinion on the second appeal in the present case. This latter citation is accompanied by the explanation that it was a "derivative action to nullify allegedly fraudulent amendment of articles of incorporation."

III. As before stated, the trial court's allowance of attorney fees is based solely on the time and skill of the attorneys, with nothing allowed for benefits to the corporation or its stockholders. Since we hold substantial benefits resulted to the stockholders and to some extent to the corporation from this litigation, it follows that applicants are entitled to a considerably larger award for fees than that made by the trial court and it is our duty to fix it.

Mr. Swift's services down to, but not including, prosecution of this application for fees extended over a period of some eight years with total hours of more than 1550. Mr. Von Hoenë's services extended over a period of some seven years, with total time of about 1840 hours. The combined services of Judge Hamilton and Mr. Cahill extended over a period of nearly seven years; with a total of 272 and 160 hours respectively, excluding time apparently spent on this application. Judge Hamilton and, after he became a judge, Mr. Cahill apparently did most of the actual trial work even though they put in considerably less time than Mr. Swift or Mr. Von Hoene. Total expenses of $1351 were incurred by the three sets of attorneys.

The fact, heretofore noted, that plaintiffs were successful on all three previous appeals of this case is an indication of the skill of their attorneys, especially when considered with the ability, standing and tenacity of opposing counsel and the difficulty of the case.

In stating the time the attorneys devoted to the case we have excluded that apparently devoted to this application for fees. As before indicated, one of the propositions defendants-cross-appellants rely upon for partial reversal is that nothing

should be allowed for the time so spent. Plaintiffs ignore the proposition. No authority is cited by anyone bearing on the question and we have found none directly in point. On principle, however, we think attorney fees should not be charged to the corporation for services in connection with this application.

These services were not rendered for the benefit of the corporation or the stockholders as a class but for the benefit of applicants themselves. No good reason appears why the corporation should pay for the attorneys' services in prosecuting this claim in addition to paying its own attorneys for resisting it. Nothing in our second opinion in the case or the precedents there cited indicates the corporation should be charged for the attorneys' services in connection with this application. On this proposition we agree with cross-appellants. Our conclusion finds support, by analogy, in Mahon v. Mahon, 257 Iowa 563, 571, 133 N.W.2d 697, 701, 702, and citations, and Thorn v. Kelley, 257 Iowa 719, 727, 134 N.W.2d 545, 549.

Both sides argue other claimed errors it is said the trial court committed. For instance, applicants argue in effect that several elements other than benefits and time and skill of the attorneys should be considered in fixing their fees, citing the extended annotation on Amount of attorney's compensation in 143 A. L. R. 673. See also 7 Am. Jur.2d, Attorneys at Law, sections 235–250. The ready answer to this argument is that our second opinion expressing the law of the case declares, as before stated, the amount allowable depends upon the substantial benefit to the corporation or its stockholders and the time and skill of the attorneys.

We have considered and expressed our view upon the main propositions relied upon by each side. Our review is on the merits de novo, not for the correction of errors at law, as in law cases. We are primarily concerned with whether the judgment is right and, if not, to direct the entry of one we believe is. See rule 334, R. C. P.; Rasmussen v. Rasmussen, 252 Iowa 414, 422, 107 N.W.2d 114, 119, and citations; The Maytag Co. v. Alward, 253 Iowa 455, 468, 112 N.W.2d 654, 661, 96 A. L. R.2d 162.

We do not favor an allowance for attorney fees based almost wholly on the hours devoted by each attorney to this liti-

gation at the minimum rates specified by county or state bar associations. Nor do we make a separate allowance for each attorney. We understand the application asks a joint, not several, allowance for the services of all the attorneys. Further, Mr. Swift testified with apparent approval of the other applicants, "we are asking for these fees in a lump sum for all three of us and we will distribute them."

We conclude fees for the attorney applicants should be fixed at $125,000 and they should be reimbursed for their expenses totaling $1351.

Costs of this appeal are taxed three fourths to defendants-cross-appellants and one fourth to intervenors-cross-appellants. —Reversed on appeal of applicants; modified and affirmed on appeal of cross-appellants; remanded for judgment consistent with this opinion.

All JUSTICES concur except THOMPSON, J., who takes no part.