**CITY OF ELDRIDGE, Appellant,**

v.

**CATERPILLAR TRACTOR COMPANY and City of Davenport, Appellees.**

No. 60917.

Supreme Court of Iowa.

Oct. 18, 1978.

Rehearing Denied Nov. 17, 1978.

McDonald, McDonald & Stonebraker and Heninger & Heninger, Davenport, for appellant.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, and Van Der Kamp, Crampton & Snyder, P. C., Rock Island, Ill., for appellee Caterpillar Tractor Co.

William B. Waterman, City of Davenport Legal Dept., Davenport, for appellee City of Davenport.

Considered by REYNOLDSON, C. J., and LeGRAND, REES, UHLENHOPP and HARRIS, JJ.

REES, Justice.

This is an appeal by the City of Eldridge (Eldridge) from orders of the trial court sustaining motions for summary judgment of defendants Caterpillar Tractor Company (Caterpillar) and City of Davenport (Davenport), and overruling plaintiff's motion to enlarge or amend findings and conclusions in accordance with rule 179, Rules of Civil Procedure. We dismiss the appeal.

On February 10, 1976 Eldridge filed its petition at law alleging: that Davenport and Caterpillar conspired to deprive Eldridge of its exclusive jurisdiction to proceed with the annexation of certain real property located between Eldridge and Davenport, part of which was owned by Caterpillar; that Caterpillar had made material misrepresentations to Eldridge in December, 1965, inducing Eldridge to enter into a ten-year moratorium agreement with Davenport regarding annexation of such property; that Eldridge relied on such representations and entered into the moratorium agreement on May 23, 1966, thus depriving Eldridge of tax revenues it would have realized had it annexed the land as it had started to do in April, 1965; and that on January 14, 1976 Caterpillar filed a voluntary annexation application with Davenport to avail itself of substantial monetary inducements contained in an agreement executed between the defendants in March of 1966 for the rendition of municipal services. The petition did not allege the existence of a fiduciary or confidential relationship between Eldridge and Caterpillar.

Attached to plaintiff's petition was a copy of the "Agreement for Municipal Services" entered into between the defendants on March 21, 1966. That agreement provided that Caterpillar would advance all costs of construction of extending sewer lines between Caterpillar's property and the City of Davenport, provided that when Caterpillar became annexed to Davenport, part of the construction costs would be repaid to Caterpillar. The agreement also contemplated the removal of the 25 percent surcharge on the costs of rental of the sewer line upon the completion of proceedings for the annexation of the land to Davenport.

There was also attached to the petition a copy of the moratorium agreement entered into between Eldridge and Davenport on May 23, 1966, by which the parties agreed that neither municipality would commence proceedings to annex the property in question for a period of ten years.

On March 1, 1976, Caterpillar filed a motion to dismiss Eldridge's petition. Eldridge amended its petition on March 22, 1976 alleging defendants had fraudulently concealed and affirmatively misrepresented the provisions and effect of the municipal services agreement, as well as alleging the elements of conspiracy between the defendants. The amendment did not allege a confidential relationship between Eldridge and Caterpillar. On May 3, 1976 the trial court overruled Caterpillar's motion to dismiss.

Following the filing of answers by both defendants in which they denied all material allegations of the plaintiff's petition except the existence of the agreement for municipal services and the moratorium agreement, discovery proceedings were undertaken. The several depositions and affidavits which resulted from the discovery processes disclosed that newspaper accounts of the municipal services agreement were read by at least three of the members of the 1966 City Council of Eldridge, but that the council members never read the specific terms of the services agreement, although it was concededly a public document. The discovery processes further disclosed that Caterpillar's attorney told the mayor of Eldridge in 1966 that there were no strings attached to the municipal services agreement and that Eldridge had an equal chance with Davenport to annex Caterpillar's land. The Davenport director of public works stated in his deposition that the specific terms of the services agreement were "fair, reasonable and consistent with accepted practice", and attached to his affidavit copies of service agreements between other cities and industries which were essentially similar to the agreement between Davenport and Caterpillar. Depositions of individuals identified by Eldridge in interrogatories as having knowledge of, or information concerning, the inducement of El-

dridge to enter into the moratorium agreement or as having knowledge of a conspiracy between defendants, were also taken. All of such individuals indicated they had no such information or knowledge. An affidavit of the plant controller of Caterpillar indicates that the company would have enjoyed tax advantages by electing to annex to Eldridge rather than to Davenport at the end of the moratorium term.

On January 26, 1977 Caterpillar filed its motion for summary judgment which was later, on February 2, 1977, joined in by Davenport. The motion for summary judgment, although resisted by Eldridge, was sustained on May 23, 1977 upon the following grounds:

(1) the municipal services agreement afforded Caterpillar no special considerations;

(2) there was no evidence of fraud, misrepresentation or conspiracy perpetrated upon the plaintiff by the defendants; and

(3) the alleged misrepresentations of Caterpillar were not material to or relied on by Eldridge in entering into the moratorium agreement.

In its resistance to the motion for summary judgment, Eldridge asserted that a confidential relationship existed between it and Caterpillar.

On June 2, 1977 Eldridge filed its motion pursuant to rule 179, R.C.P., for the court to enlarge or amend its findings and conclusions and for the court to find specifically whether in 1965 and 1966 a confidential, trust or fiduciary relationship existed between Eldridge and Caterpillar. The motion to enlarge was overruled on June 24, 1977, the trial court noting that the finding sought by plaintiff's motion "has been by implication decided against plaintiff" in the previous order sustaining the defendants' motion for summary judgment.

On July 21, Eldridge filed its notice of appeal, appealing both from the court's order sustaining defendants' summary judgment and the order overruling plaintiff's motion to enlarge or amend findings and conclusions under rule 179(b), R.C.P. Nota-

bly, the notice of appeal was filed within 30 days of the order overruling the motion for enlargement and amendment of findings and conclusions under rule 179(b), but more than 30 days after the order of the trial court sustaining defendants' motion for summary judgment. Caterpillar filed its motion to dismiss the appeal as untimely, and on August 31, by order of this court, such issue was ordered submitted with this appeal.

The following issues are presented for review:

(1) Is a motion under rule 179(b), R.C.P., to enlarge findings and conclusions permissible following a ruling on a motion for summary judgment?

(2) Was there sufficient information before the trial court to generate a genuine issue of material fact on the existence of a fiduciary or confidential relationship between Eldridge and Caterpillar?

(3) Do the pleadings, depositions and answers to interrogatories support a genuine issue of material fact on each of the elements of fraud or conspiracy against Eldridge by the defendants regarding the moratorium agreement?

I. The first issue for review involves the preliminary question as to the timeliness of plaintiff's appeal from the order of the trial court sustaining defendants' motion for summary judgment. Plaintiff's motion under rule 179(b), R.C.P., was filed in a timely manner and, if proper, would have served to toll the running of the 30-day period for appeal as provided for in rule 5 of the Rules of Appellate Procedure. If plaintiff's 179(b) motion was not proper, then the appeal was not taken within the 30-day period following the order of the trial court sustaining the motion for summary judgment and the appeal must be dismissed.

Rule 179 provides:

"(a) The court trying an issue of fact without a jury, whether by equitable or ordinary proceedings, shall find the facts in writing, separately stating its conclusions of law; and direct an appropriate judgment. No request for findings is necessary for purposes of review. * *

"(b) On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be enlarged or amended and the judgment or decree modified accordingly or a different judgment or decree substituted. * * *"

Thus it would appear from the first portion of the foregoing rule that it is applicable only when the court is "trying an issue of fact without a jury". We therefore proceed to a consideration as to whether a summary judgment proceeding constitutes the trying of "an issue of fact without a jury".

The basis essential to a summary judgment proceeding is set forth in rule 237(c), R.C.P.:

"* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

It is evident a summary judgment proceeding involves a determination that the moving party, not upon a factual resolution of an issue, but as a matter of law, is entitled to judgment. The trial court, in passing on the motion for summary judgment in the matter before us here, was not "trying an issue of fact without a jury", but was determining whether there were issues of material fact for submission to a trier-of-fact. Although we have never directly addressed this issue, we have noted that "it may be doubted" whether rule 179 is applicable in a summary judgment context. *Petit v. Ervin Clark Construction Co.*, 243 Iowa 118, 49 N.W.2d 508, 513. A holding that plaintiff's motion was improper would be consistent with both the express terms of the foregoing applicable rules and any inferences which may be drawn from prior opinions of this court.

Such a conclusion is also consistent with the purpose behind rule 179, for standards regarding the clarity of rulings on summary

judgment motions are found elsewhere in the Rules of Civil Procedure.

■ As we noted in *Berger v. Amana Society,* 257 Iowa 956, 120 N.W.2d 465, 467:

"One of the primary purposes of this section [179(b)] is to advise counsel and the appellate court of the basis of the trial court's decision in order that counsel may direct his attack upon specific adverse findings or rulings in the event of an appeal."

The sustaining of a motion for summary judgment is nothing more nor less than a determination that there are no issues of material fact, and that the moving party is entitled to judgment as a matter of law, both of which elements must be specifically alleged by the moving party. The court will consider each alleged ground for summary judgment, and in accord with rule 118, R.C.P., dispose of each ground by separate ruling. There are no findings of fact which could be amended or enlarged, while rule 118 guarantees the clarification of the legal grounds for either sustaining or overruling a motion. The basis of the ruling is made obvious to the parties involved.

Support for the foregoing conclusion is provided by analogous rule 52 of the Federal Rules of Civil Procedure, which provides:

"(a) EFFECT. In all actions tried upon the facts without a jury or without an advisory jury, the court shall find the facts specifically and state separately its conclusions of law thereon, * * *

"(b) AMENDMENT. Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. * * *"

Although rule 52 was amended in 1946 to exclude almost all motions, including those for summary judgment, from its operation, judicial interpretation of rule 52 preceding the amendment is informative. In *Thomas v. Peyser,* 73 U.S.App.D.C. 155, 118 F.2d 369, 374 (1941), the court affirmed a judgment that had sustained a motion to dismiss for failure to state a claim on which relief could be granted, stating:

"Rule 52(a) . . . requires findings 'in all actions tried upon the facts.' This case was not tried upon the facts. The facts were admitted by the motion to dismiss. Obviously there need be no fact findings where facts are not in issue. The only issues determined by the trial court were questions of law and these adequately disposed of the case."

More specifically on point, in *Lindsey v. Leavy,* 149 F.2d 899, 902 (9th Cir. 1945), the court said:

"Since a summary judgment presupposes that there are no triable issues of fact, findings of fact and conclusions of law are not required in rendering judgment, although the court may make such findings with or without request. Failure to make and enter findings and conclusions is not error."

Since there are no factual determinations to be made on a motion for summary judgment, we fail to perceive how the ruling thereon could properly be amended.

■ The analogy between the federal and Iowa rules is further supported by the fact that rules 179 and 52 are respectively entitled "Findings by Court". As is indicated by statutory usage and subsequent judicial interpretation, "findings" generally relate to factual determinations, and "conclusions" to determinations of questions of law. In a summary judgment proceeding no findings of fact, as such, are involved, and rule 179 is therefore inapplicable.

■ A motion under rule 179(b) not being available to the plaintiff in the present action, we are without jurisdiction to proceed since the appeal was not timely within the provisions of rule 5, R.A.P., more than 30 days having passed since the sustaining of the motion for summary judgment before the appeal was taken. Like an untimely motion under rule 179(b), an improper motion thereunder does not act to toll the running of the 30-day period for filing an appeal under rule 5, R.A.P. *Cf. Qualley v. Chrysler Credit Corp.,* 261 N.W.2d 466 (Iowa 1978).

Accordingly, we are without jurisdiction to consider the remaining issues. The plaintiff's appeal is dismissed.

APPEAL DISMISSED.

All Justices concur except HARRIS, J., who dissents.

HARRIS, Justice (dissenting in part).

I believe the majority's interpretation of rule 179 places unsuccessful litigants in an impossible situation, a situation not demanded nor contemplated by the rule. It seems to me the appeal in this case was timely and that we should consider it on the merits. On the merits I do not believe the plaintiff city can prevail. Accordingly, I would affirm the trial court.

I. There is some doubt that the conclusion reached by the trial court was demanded by our holdings in *Berger v. Amana Society,* 257 Iowa 956, 120 N.W.2d 465 (1965) and *Petit v. Ervin Clark Constr., Inc.,* 243 Iowa 118, 49 N.W.2d 508 (1951). Nevertheless there was a certain amount of confusion and uncertainty on the question at the time those opinions were filed.

That uncertainty was answered by the amendment to rule 179(b) in 1973. By that amendment the trial court was given the power to enlarge or amend its conclusions in addition to its findings. Prior to that time the rule provided only for an enlargement of the findings. The 1973 amendment was aimed at precisely the situation in this case. It should be considered in the light of important difficulties facing an unsuccessful litigant who is presented with an unfavorable, and seemingly incomplete, decree. At the outset, such a litigant is caught between two uncertain risks. On the one hand he must take care not to appeal from an interlocutory order without permission (under rule 2, Rules of Appellate Procedure). If he makes that mistake we are without jurisdiction to entertain his appeal. *Citizen's State Bank v. Central Sav. Ass'n,* 267 N.W.2d 33 (Iowa 1978). At the same time the unsuccessful litigant must be careful not to act in the mistaken belief some final order was in fact interlocutory. If he falls into that error his time for appeal may pass. *State v. Onstot,* 268 N.W.2d 219 (Iowa 1978).

Concern with a premature or tardy appeal becomes even more difficult when rule 179(b) is considered. If unsuccessful counsel does not move for an enlargement he often waives error on appeal. *Arnold v. Lang,* 259 N.W.2d 749, 753 (Iowa 1977); *Fjelland v. Wemhoff,* 249 N.W.2d 634 (Iowa 1977). And if the unsuccessful litigant appeals without filing a motion under rule 179(b) he not only waives possible error but also divests the trial court of jurisdiction to further consider the matter. *In re Marriage of Novak,* 220 N.W.2d 592, 596 (Iowa 1974). At the same time, the litigant knows that if he does file the motion to enlarge under rule 179(b), he enjoys at least the hope that the trial court will rule in his favor.

To accommodate these concerns rule 179(b) was expanded in 1973 to toll the running of the time for filing appeal. In this way the trial court is accorded the jurisdiction and the opportunity to enlarge or amend its findings, conclusions, or decree. After the trial court has done so, or refused to do so, either litigant should be given the stated time for bringing appeal.

The scheme for enlargement motions, and their effect on time for appeal, was more recently accommodated in rule 5, R.App.P. (formerly rule 335, Rules of Civil Procedure). Under rule 5 a litigant may appeal within 30 days following the action of the trial court on the motion to enlarge.

I believe the majority's holding will result in untold confusion—confusion our recent rule changes attempted to obviate. Setting the time for appeal according to whether a motion to enlarge seeks further consideration of the facts or the law will force litigants to make fine, error-prone judgments. What about mixed questions of fact and law? Will the litigant be left with no choice but to forego his motion and accept the waivers that might result on appeal?

Rule 179(b) should be a valuable and necessary tool. Use of the tool might obviate the need for appeal. But, under the majori-

ty's holding, use of that tool will often waive the appeal itself.

I therefore dissent from the majority's holding that this appeal should be dismissed.

II. I agree with defendant's claim that the evidence did not establish either a fiduciary or confidential relationship, nor even create a genuine issue of material fact on that question. *Popejoy v. Eastburn,* 241 Iowa 747, 41 N.W.2d 764 (1950).

I likewise agree with defendants that the summary judgment was properly granted in their favor because there was no evidence on which the trial court could have found either fraud or the existence of a conspiracy between the defendants. Since there is no conflict in the evidence on that question, summary judgment was proper. *Jacobs v. Stover,* 243 N.W.2d 642, 643 (Iowa 1976).

I would affirm the trial court.