R.B.Z. and C.Z. were assaulted at R.B.Z.'s apartment by the property manager's ex-husband, who still lived with her. The ex-husband previously had been convicted of rape and had served time in prison for that conviction. R.B.Z. and C.Z. sued several defendants, including Bentwood Apartments, a partnership that operated the apartment complex; the property manager, Carol Black; the ex-husband, Thomas Black; Warwick Development Company; Salisbury Development Company; Grayco Development Company; Grayson Construction Company; and James Marshall Grayson, James Marshall Grayson, Jr., Mary Louise Carr, Claude Andrew Grayson, and Grayson Dix, all of whom are partners the Bentwood Apartments partnership.
Carol Black filed a motion for summary judgment, but her motion was denied. The court entered a summary judgment for individual partners of Bentwood Apartments, with the agreement of counsel that they would remain liable for the debts of the partnership. Another summary judgment was entered in favor of Salisbury Development Corporation, Grayson Construction Company, and Grayco Development Corporation. Those entities are not parties to this appeal. Another summary judgment was entered in favor of Warwick Development Company, Bentwood Apartments, James Marshall Grayson, Jr., and Mary Louise Carr; R.B.Z. and C.Z. appeal from that summary judgment, which the trial court made final pursuant to Rule 54(b), Ala.R.Civ.P.
The record shows that R.B.Z. leased an apartment at Bentwood Apartments in Birmingham in January 1993, before she and C.Z. were married. On April 11, 1993, R.B.Z. and C.Z., who were then dating, were attacked upon entering R.B.Z.'s apartment. There were no signs of forced entry at the apartment. C.Z. was assaulted and was forced to watch as the attacker sexually assaulted R.B.Z. R.B.Z. and C.Z. viewed a police line-up and identified Thomas Black as their assailant.
Before the attack on R.B.Z. and C.Z., Thomas Black had been convicted of rape and had served time in prison, a fact which was known to his ex-wife, Carol Black, the property manager at Bentwood. Although Thomas and Carol were divorced, they were living together at the time of the attack. They did not live at the apartment complex.
In her deposition, Carol testified that she was responsible for the day-to-day operations of the complex, including maintenance, groundskeeping, and security. She also said that as property manager, she had a master key that she kept in her purse. She testified that she had the master key in her purse at home the night of the attack.
There is no evidence that Thomas was an employee of the apartment complex; yet, on the day of the attack, Carol had sent him into R.B.Z.'s locked apartment with the complex's part-time resident manager, Dale Meisner. There is also evidence that Thomas had changed the lock on at least one apartment.
R.B.Z. and C.Z. contend that the trial court erred in entering the summary judgment in favor of Bentwood Apartments, Warwick Development Company, James Marshall Grayson, Jr., and Mary Louise Carr. That judgment does not specify the ground or grounds the court relied on in entering it.
To enter a summary judgment, the trial court must determine that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. Rule 56 is read in conjunction with the "substantial evidence *Page 568 
rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989).
"[T]o defeat a defendant's properly supported motion for summary judgment, the plaintiff must present 'substantial evidence,' i.e., 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989)." Altadena Valley Golf Country Clubv. Blue Cross Blue Shield of Alabama, 644 So.2d 913, 915
(Ala. 1994).
"On a motion for summary judgment, when the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to show 'substantial evidence' in support of his or her position. Bean v. Craig,557 So.2d 1249, 1252 (Ala. 1990)." Altadena Valley Golf CountryClub, 644 So.2d at 915.
At issue in this case is whether the defendants had a duty to protect R.B.Z. and C.Z. from an attack by a third party.
 "The general rule in Alabama is that 'absent special relationships or circumstances, a person has no duty to protect another from criminal acts of a third person.' Moye v. A.G. Gaston Motels, Inc., 499 So.2d 1368, 1370 (Ala. 1986). 'Special circumstances' exist only when the defendant 'knew or had reason to know of a probability of conduct by third persons that would endanger the plaintiff.' Nail v. Jefferson County Truck Growers Association, Inc., 542 So.2d 1208, 1211 (Ala. 1988). For the 'special relationship' exception to apply, there must be a relationship either between the premises owner and the third party or between the premises owner and the plaintiff. Young v. Huntsville Hospital, 595 So.2d 1386 (Ala. 1992), citing Restatement (Second) of Torts, § 315 (1965)."
Saccuzzo v. Krystal Co., 646 So.2d 595, 596 (Ala. 1994).
In Young v. Huntsville Hospital, 595 So.2d 1386 (Ala. 1992), the Alabama Supreme Court held that a hospital had a "special relationship" with its patients, especially those who had been sedated or anesthetized, and therefore had a duty to protect those patients from criminal acts of third parties. In support of this holding, the court cited the "growing national trend in the law toward expanding the recognized 'special relationships' that give rise to the exception to the general rule of no liability." Young, 595 So.2d at 1388. The court also favorably cited a commentator who believes that "recognition of an additional 'special relationship' should hinge on 'dependence or mutual dependence' among the parties." Id.
In applying the dependence test in this case, we conclude that a 'special relationship' exists between tenants of an apartment complex, and the apartment complex and its managers. The complex keeps a master key that provides a number of people, including the property manager, the resident manager, maintenance workers, and cleaning people, with access to tenants' locked apartments. The regulations accompanying the lease signed by R.B.Z. stipulated that the locks and keys to the apartments in the Bentwood complex were under the control of Bentwood Apartments, and that tenants could not add their own locks, or change the locks, without the written consent of the complex. Therefore, tenants at Bentwood are dependent upon the complex to exercise care not only as to who is permitted to go into their apartments, but also as to who has access to the keys to their apartments. Certainly, Bentwood has a duty to prevent nonemployees — in this case a convicted rapist — from having access to its tenants' apartments. We hold that, based on the facts of this case, the tenants at Bentwood Apartments had a special relationship with the complex that excepts this case from the general rule that one will not be liable for the criminal acts of another. See, Young, 595 So.2d 1386.
The issue of whether the crimes against R.B.Z. and C.Z. was foreseeable is a question for a jury to answer. Young, 595 So.2d at 1389; Thetford v. City of Clanton, 605 So.2d 835
(Ala. 1992). "Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence *Page 569 
could have been anticipated." Thetford v. City of Clanton,605 So.2d 835, 840 (Ala. 1992). The record shows that the complex's own property manager, Carol Black, knew that Thomas Black had been convicted of rape and yet gave him access to the apartments of single women. There is no evidence that Thomas was a Bentwood employee, although he was given access to tenants' apartments. R.B.Z. and C.Z. did present evidence, however, that Bentwood had lackadaisical policies concerning who had access to its tenants' apartments or to the keys that allowed access to those apartments. We believe that from this evidence a jury could find that not only that the assaults on R.B.Z. and C.Z. were foreseeable, but that the actions or policies of the apartment complex actually facilitated the crime. The apartment complex should not be allowed to hide behind laws intended to protect parties whose property, through ill fortune, happened to be the scenes of a crime.
As mentioned above, the trial court did not specify the basis for this summary judgment. However, in moving for the summary judgment, Warwick Development argued that it was entitled to a summary judgment because the plaintiffs had presented no evidence that Warwick was responsible for the management of the Bentwood complex.
"The existence and scope of a principal-agent relationship is normally a question of fact to be determined by the jury."Continental Electric Co. v. American Employers' Insurance Co.,518 So.2d 83 (Ala. 1987). R.B.Z. and C.Z. presented evidence that Warwick Development paid the salaries of Carol Black, who was Bentwood's property manager; the maintenance worker at Bentwood; and Andrew Grayson, who said he was responsible for the operation of Bentwood. Evidence also was presented that Warwick received rental payments from Bentwood's tenants. We believe that this evidence created a question of fact for the jury as to Warwick's liability in this case.
Based on the foregoing, the judgment of the circuit court is reversed and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., concurs.
THIGPEN, J., concurs in the result.