Patricia TENNEY, Appellant,

v.

ATLANTIC ASSOCIATES d/b/a Park Towne Apartments, Appellee.

No. 97–1201.

Supreme Court of Iowa.

April 28, 1999.

Stanley A. Roush, Cedar Rapids, for appellant.

Richard C. Garberson and Theresa C. Davis of Shuttleworth & Ingersoll, P.C., Cedar Rapids, for appellee.

Considered by LARSON, P.J., and LAVORATO, SNELL, TERNUS, and CADY, JJ.

LARSON, Justice.

Patricia Tenney sued Atlantic Associates d/b/a Park Towne Apartments, the manager of her apartment building, for damages sustained when she was raped by a stranger in her apartment. The district court entered a summary judgment for the defendant, and the plaintiff appealed. We reverse and remand.

## I. *Facts and Prior Proceedings.*

The facts in the summary judgment record, viewed in the light most favorable to the plaintiff, show that Patricia Tenney arrived home early in the morning of December 5, 1993. She was raped by an unknown intruder who had gained access to her apartment, apparently by the use of keys, on December 4 or early December 5. The door to Tenney's apartment had two locks, including a dead bolt, and both locks were operated by keys. There were no signs of a forced entry. When Tenney originally moved into the apartment, the key provided for her did not open her door, so she returned it. A Park Towne employee gave her two different keys and told Tenney they were the master keys and they would have to have them back in order to make copies because they did not have any other keys to Tenney's apartment. Her locks had not been changed after the former tenant moved out, so the same master keys continued to operate her locks.

Tenney's suit alleged Park Towne was negligent in failing to maintain records of access to keys to the apartment, failing to change the lock when she moved in, and failing to maintain adequate security with regard to the keys kept in the manager's office.

Park Towne filed a motion for summary judgment, and the district court granted it, holding as a matter of law that (1) Park Towne had not breached a duty to Tenney, and (2) the action of the intruder was a superseding cause of the plaintiff's injuries. Ten days after the summary judgment ruling, Tenney filed a motion under Iowa Rule of Civil Procedure 179(b) to modify the order. She also filed an "application for record inclusion" by which she sought to introduce additional documents to support her resistance. The district court denied both motions.

## II. *The Issues.*

■ A. *The defendant's issue.* The defendant raises an issue of appellate jurisdiction, and we address that first. It claims the plaintiff did not appeal within the thirty days from final judgment provided by rule of appellate procedure 5(a). This issue was initially raised in a motion to dismiss the appeal, which we denied. We ordered the matter of appellate jurisdiction to be submitted with the appeal.

The district court granted the defendant's motion for summary judgment on April 29, 1997. On May 9 the plaintiff filed the two motions mentioned above: one under rule 179(b), asking the court to amend its order, and the other a motion to include additional material. The court denied both of these motions on June 3, 1997, and the plaintiff filed her notice of appeal on July 2, 1997, which was within thirty days of the court's order on her rule 179(b) motion. *See* Iowa R.App. P. 5(a) (if rule 179(b) motion filed, thirty-day appeal time runs from date of ruling on motion). The defendant, however, says the thirty days ran from the date of the original summary judgment (sixty-two days earlier) and not from the June 3 ruling on the rule 179(b) motion.

Before addressing the merits of the defendant's jurisdiction argument, we digress briefly to discuss in general the role of rule 179(b) motions in summary judgment

cases—a matter that still seems to create confusion. In *City of Eldridge v. Caterpillar Tractor Co.*, 270 N.W.2d 637, 640–41 (Iowa 1978), we held that rule 179(b) applied only when the court is trying an issue of fact without a jury, and a summary judgment proceeding did not fall in that category. The *City of Eldridge* holding, however, has been abrogated by a 1980 amendment to our summary judgment rule. Now "[i]f summary judgment is rendered on the entire case, RCP 179(b) shall apply." Iowa R. Civ. P. 237(c); *see also Nuzum v. State*, 300 N.W.2d 131, 134 (Iowa 1981). In this case, the district court entered summary judgment on the entire case, so rule 179(b) was an appropriate means to challenge the summary judgment ruling.

The defendant, however, contends the rule 179(b) motion was insufficient in any event

> because it sought to inject a large quantity of new evidence [through the "application for record inclusion"] and to reargue the summary judgment motion based upon evidence that was not in the record at the time the summary judgment was decided.

*See Stockdale, Inc. v. Baker*, 364 N.W.2d 240, 243–44 (Iowa 1985) (filing of affidavit to bolster resistance to summary judgment not permitted after summary judgment entered). If the plaintiff's motion is not a proper rule 179(b) motion, it was ineffective to delay the running of the thirty-day appeal time, and the appeal would have to be dismissed. *See Bellach v. IMT Ins. Co.*, 573 N.W.2d 903, 905 (Iowa 1998).

We agree that the court properly denied the plaintiff's application to include new material after the court's ruling. We do not agree with the defendant, however, that the rule 179(b) motion was a nullity. It is true the postjudgment motion relied on evidence that had not been included in the original resistance, but it also relied on evidence that *had* been included in the resistance. The evidence included answers to interrogatories outlining the opinion of the plaintiff's experts and facts set out by the plaintiff concerning the practices of the defendant with regard to security. The plaintiff's motion asked the court to modify the judgment in light of this evidence and was a proper motion under rule 179(b). The motion was sufficient to toll the thirty-day appeal time, and we therefore reject the defendant's appellate-jurisdiction argument.

B. *The plaintiff's issues.* Tenney challenges the court's conclusions that the plaintiff failed to establish a duty of care and the acts of the intruder were superseding causes of the plaintiff's injuries.

### III. *Standard of Review.*

We review a district court's summary judgment for errors at law. Iowa R.App. P. 4; *Sampson v. American Standard Ins. Co.*, 582 N.W.2d 146, 149 (Iowa 1998). Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 237(c); *Ranney v. Parawax Co.*, 582 N.W.2d 152, 153 (Iowa 1998). We review the record in the light most favorable to the party opposing the motion. *Sampson*, 582 N.W.2d at 149. The burden of showing the nonexistence of a material fact is upon the moving party. *Knapp v. Simmons*, 345 N.W.2d 118, 121 (Iowa 1984).

### IV. *The Liability Issue.*

The district court ruled that, even assuming Park Towne and its tenant had a "special relationship," Restatement (Second) of Torts § 314A, at 118 (1965), Park Towne still owed no duty of care to the plaintiff to prevent her injuries at the hands of a third party. The reason given by the court was that

> [a] landlord must know or should know of an unreasonable risk of injury [to owe a duty of care]. A landlord is not required to take precautions against a sudden attack from a third person which it has no reason to anticipate [and][t]here

is nothing in the record in this case which would place Park Towne on notice of potential criminal activity, let alone the type of assault which Tenney suffered.

(Citation omitted.)

■ Whether a duty exists is a question of law that may be properly resolved in a summary judgment proceeding. *Martinko v. H–N–W Assocs.*, 393 N.W.2d 320, 321 (Iowa 1986) (duty of care toward member of public under Restatement (Second) of Torts § 344, at 223–24 (1965)).

■ A. *The duty.* A landlord is not an insurer against every conceivable act by a third party but is required to provide reasonable security against the injury under the circumstances shown by the record. *Brichacek v. Hiskey*, 401 N.W.2d 44, 47 (Iowa 1987) (citing *Kline v. 1500 Mass. Ave. Apartment Corp.*, 439 F.2d 477, 481 (D.C.Cir.1970)). But

> [t]he. fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

Restatement (Second) of Torts § 314, at 116.

> The rationale of this rule is explained:
>
> The origin of the rule [generally denying recovery] lay in the early common law distinction between action and inaction, or "misfeasance" and "non-feasance." In the early law one who injured another by a positive affirmative act was held liable without any great regard even for his fault. But the courts were far too much occupied with the more flagrant forms of misbehavior to be greatly concerned with one who merely did nothing, even though another might suffer serious harm because of his omission to act. Hence liability for nonfeasance was slow to receive any recognition in the law. It appeared first in, and is still largely confined to, situations in which there was some *special relation between the parties*, on the basis of

which the defendant was found to have a duty to take action for the aid or protection of the plaintiff.

Restatement (Second) of Torts § 314 cmt. c, at 116–17 (emphasis added); *see also* W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 33, at 201–02, § 63, at 442 (5th ed. 1984) [hereinafter Prosser & Keeton].

The Restatement provides a short list of special relationships that, despite the general rule, create a duty to aid or protect others. This includes the relationship between an innkeeper and his guest. Restatement (Second) of Torts § 314A. The innkeeper-guest relationship, because of its similarity to the landlord-tenant relationship, has prompted an evolution in the law of landlord-tenant relationships.

> Prior to 1970, there was no general tort duty on landlords to protect their tenants against criminal theft or attack. The situation began to change in that year, however, with the landmark decision of *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, which imposed a duty of reasonable care upon the owner of an urban multiple unit apartment dwelling to protect its tenants from foreseeable criminal assaults. A growing number of courts have imposed similar duties of reasonable protection upon landlords to protect their tenants, and to protect others perhaps as well, from criminal attack, provided that such assaults are *reasonably foreseeable and preventable.*

Prosser & Keeton § 63, at 442–43 (footnotes omitted) (emphasis added).

*Kline*, the case referred to by Prosser & Keeton, involved facts similar to those in this case, although in *Kline* a tenant was assaulted and robbed in a common hallway, not in her own apartment, as in this case. When Ms. Kline first moved into her apartment, doormen provided security at the entrances and the lobby desk was staffed at all times. Within a few years the doormen were gone, and the desk was left unattended much of the time, "in the

face of an increasing number of assaults, larcenies, and robberies being perpetrated against the tenants in and from the common hallways." *Kline*, 439 F.2d at 479. The court noted that responsibility for providing security at the main entrance and in the common hallways and elevators was in the landlord, and the lessees of individual apartments were not in a position to provide it. *Id.*

*Kline* discussed the rationale driving the rule denying recovery by tenants: generally a private person has no duty to protect another from a criminal attack; the criminal act is a superseding cause of the harm; it is difficult to assess foreseeability of criminal acts; any standard that the landlord must meet would be vague; adverse economic consequences would be incurred by the landlord; and public policy favors allocating protection of citizens to the government. *Id.* at 481. The court continued:

> But the rationale of this very broad general rule falters when it is applied to the conditions of modern day urban apartment living, particularly in the circumstances of this case. The rationale of the general rule exonerating a third party from any duty to protect another from a criminal attack has no applicability to the landlord-tenant relationship in multiple dwelling houses. The landlord is no insurer of his tenants' safety, but he certainly is no bystander. And where, as here, the landlord has notice of repeated criminal assaults and robberies, has notice that these crimes occurred in the portion of the premises exclusively within his control, has every reason to expect like crimes to happen again, and has the exclusive power to take preventive action, it does not seem unfair to place upon the landlord a duty to take those steps which are within his power to minimize the predictable risk to his tenants.

*Id.*

The court in *Kline* explained the rationale for the changed attitude of courts toward the landlord-tenant relationship:

This court has recently had occasion to review landlord-tenant law as applied to multiple family urban dwellings. In *Javins v. First National Realty Corporation* the traditional analysis of a lease as being a conveyance of an interest in land—with all the medieval connotations this often brings—was reappraised, and found lacking in several respects. This court noted that the value of the lease to the modern apartment dweller is that it gives him "a well known package of goods and services—a package which includes not merely walls and ceilings, but also adequate heat, light and ventilation, serviceable plumbing facilities, *secure windows and doors,* proper sanitation, and proper maintenance." It does not give him the land itself, and to the tenant as a practical matter this is supremely unimportant.

*Id.* at 481–82 (quoting *Javins v. First Nat'l Realty Corp.*, 428 F.2d 1071, 1074 (D.C.Cir.1970) (footnotes omitted) (emphasis added)).

The parallels between innkeepers (who have a special duty of care to guests under Restatement section 314A(2)) and landlords was discussed by the court in *Javins:*

> Even the old common law courts responded with a different rule for a landlord-tenant relationship which did not conform to the model of the usual agrarian lease. Much more substantial obligations were placed upon the keepers of inns (the only multiple dwelling houses known to the common law). Their guests were interested solely in shelter and could not be expected to make their own repairs. "The modern apartment dweller more closely resembles the guest in an inn than he resembles an agrarian tenant, but the law has not generally recognized the similarity."

*Javins,* 428 F.2d at 1077 n. 33 (quoting J. Levi, P. Hablutzel, L. Rosenberg & J. White, *Model Residential Landlord–Tenant Code* 6–7 (Tent. Draft 1969)).

In further developing the innkeeper-guest analogy, the *Kline* court said:

> Specifically, innkeepers have been held liable for assaults which have been committed upon their guests by third parties, if they have breached a duty which is imposed by reason of the innkeeper-guest relationship. By this duty, the innkeeper is generally bound to exercise reasonable care to protect the guest from abuse or molestation from third parties, be they innkeeper's employees, fellow guests, or intruders, if the attack could, or in the exercise of reasonable care, should have been anticipated.

*Kline*, 439 F.2d at 482 (footnote omitted).

One writer has assessed this evolution in landlord-tenant law:

> Thus, in a single decade, landlords have lost the tort immunity that has been recognized for centuries, and have even become responsible for the criminal acts of others that they could have prevented with reasonable care. *Rarely in the history of American property law has there been such a sudden judicial rejection of well established precedent.*

Edward H. Rabin, *The Revolution in Residential Landlord–Tenant Law: Causes and Consequences*, 69 Cornell L.Rev. 517, 529–30 (1984) (footnotes omitted) (emphasis added). Other writers have been more blunt toward the rule of virtual landlord immunity, calling it a "scandal." Thomas M. Quinn & Earl Phillips, *The Law of Landlord–Tenant: A Critical Evaluation of the Past With Guidelines for the Future*, 38 Fordham L.Rev. 225, 225 (1969).

■ We conclude that a landlord, just as any other actor, owes a duty of due care to protect its tenants from reasonably foreseeable harm and

> must act as a reasonable person under all of the circumstances including the likelihood of injury to others, the probable seriousness of such injuries, and the burden of reducing or avoiding the risk.... The questions of control, hidden defects and common or public use, which formerly had to be established as a prerequisite to even considering the negligence of a landlord, will now be relevant only inasmuch as they bear on the basic tort issues such as the foreseeability and unreasonableness of the particular risk of harm.

*Sargent v. Ross,* 113 N.H. 388, 308 A.2d 528, 534 (1993) (citations omitted). We agree that this " 'reasonable care in all the circumstances standard will provide the most effective way to achieve an allocation of the costs of human injury which conforms to present community values.' " *Id.* (quoting *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 52 (1973)). This standard

> should help ensure that a landlord will take whatever precautions are reasonably necessary under the circumstances to reduce the likelihood of injuries from defects in his property. "It is appropriate that the landlord who will retain ownership of the premises and any permanent improvements should bear the cost of repairs necessary to make the premises safe...."

*Sargent,* 308 A.2d at 535 (quoting *Kline v. Burns,* 111 N.H. 87, 276 A.2d 248, 251 (1971)).

■ A duty of care arising out of a landlord-tenant relationship, like that of an innkeeper and guest under Restatement section 314A, does not make the landlord an insurer. Nor will the rule of law be equally applicable in every case.

> The duty in each case is only one to exercise reasonable care under the circumstances. The defendant is not liable where he neither knows nor should know of the unreasonable risk, or of the illness or injury. He is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate, or to give aid to one whom he has no reason to know to be ill. He is not required to take any action

where the risk does not appear to be an unreasonable one....

Restatement (Second) of Torts § 314A cmt. e, at 120.

This rule of liability, which requires reasonable foreseeability, must be distinguished from premises liability under Restatement section 344, which arguably presupposes foreseeability. *Martinko*, 393 N.W.2d at 323 (Carter, J., dissenting).

■ B. *Evidence of foreseeability.* For the reasons discussed, the plaintiff must eventually establish that the risk of harm by a third party was reasonably foreseeable to the defendant in order to establish a duty. Here, the specific question is whether the defendant showed the absence of a genuine issue of fact on foreseeability. In *Martinko* this court held that the plaintiff had failed to generate a genuine issue of fact on foreseeability that a mall patron would be murdered in a parking lot because

> [t]here was ... no evidence that his mall, or even its surrounding area, suffered from *any* crimes, much less violent ones. To hold as the plaintiff argues places liability on the defendants regardless of foreseeability.

*Martinko*, 393 N.W.2d at 322. In *Martinko* we acknowledged that prior crimes on the premises were not an absolute requirement of foreseeability "if possessors of land know or have reason to know it is *about to occur.*" *Id.* (citing Restatement (Second) of Torts § 344 cmt. f, at 225). We affirmed a summary judgment for the defendants. *Martinko*, 393 N.W.2d at 323.

A later case, *Galloway v. Bankers Trust Co.,* 420 N.W.2d 437 (Iowa 1988), involved a sexual assault on a patron in a mall restroom. That case also involved liability under Restatement section 344, and the issue again was foreseeability. In *Galloway* there was evidence of property crimes at the mall, but there were no reports of sexual assaults there. *Id.* at 439. We noted that "[a] history of crimes against persons would, of course, make a stronger case of foreseeability, but we do not believe it is a prerequisite to proof of foreseeability." *Id.* at 440. We concluded in *Galloway* that general crimes in the mall were similar acts, for purposes of establishing foreseeability, and reversed a summary judgment for the mall owners. *Id.* at 439.

■ In the present case, as in *Galloway* and *Martinko*, the issue is whether the plaintiff's resistance to summary judgment presented evidence generating a genuine issue of fact on foreseeability. The plaintiff's resistance included answers to interrogatories that we believe generated a genuine issue of fact.

The plaintiff's own answers stated, in part:

> I saw a cabinet in the office containing many keys every time I entered which was always unlocked and often unattended.
>
> When I moved in, I was given 1 key that did not work (they had 2 keys when they showed [the] apartment). When I went back, they gave me 2 keys and stated that they were the only keys in existence and they would need possession of my keys later to copy for the master set. They never contacted me. I had a problem with the heat and the faucets and both times someone had entered my apartment with a key to work on [the] problem and left a note. This despite my being told there would be no entry without notice.
>
> When I received the 2 keys, a key ring identified for my apartment was taken off a hook in the cabinet. The key ring had numerous keys on it, at least 2 or 3 more.
>
> There is no doubt that I was assaulted by someone who gained entry with a key.

The answer to interrogatories regarding the plaintiff's two experts not only outlined their opinions as to the acts of negligence on the part of the defendant; they also made it clear that at least one prior act of

attempted assault had happened on the premises. These answers to interrogatories were also submitted in resistance to the summary judgment motion. One witness, Phillip Schneider, is a professional appraiser experienced in facilities of this type. According to him, the defendant failed to respond adequately after a groundskeeper at Park Towne had entered an apartment with a key and attempted to sexually assault a tenant. (Park Towne continued to employ him for two years afterward.) In addition, Schneider noted the following factors that could reasonably be expected to lead to third-party crimes: failure to do appropriate background check of employees, failure to control access to master keys, failure to change locks prior to new occupancy, failure to maintain adequate security of regular keys, failure to establish and communicate policies to employees regarding keys, failure to maintain written policies with regard to keys, and failure to maintain written policies or communicate policies to employees regarding security.

Thomas Costello's opinions were also included in the plaintiff's answers to interrogatories. Costello is a certified public housing manager and a certified property manager. He is a former president of the St. Louis chapter of the Institute of Real Estate Management. His report highlighted the defendant's failure to adequately respond to the previous attempted sexual assault at Park Towne. He stated that the defendant "failed to act in conformity with the standard of conduct of a reasonably prudent apartment manager" by failing to take reasonable steps to prevent unauthorized access to the plaintiff's apartment. Further, according to him, the defendant lacked a proper management plan and was negligent in providing an on-site manager only about ten percent of the time. According to him, this is insufficient for a 400–unit apartment complex. In addition, the defendant failed to adequately secure keys and failed to change locks in nine years, "despite incidents that would cause provident [persons] to change the locks." In addition, his opinion was the master locks and keys were not properly accounted for.

Iowa Rule of Civil Procedure 237(c) provides that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories [etc.] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Here, the defendant failed to show a lack of a genuine issue of material fact on foreseeability. We conclude that the court erred in finding as a matter of law that this defendant did not owe a duty of care to the plaintiff.

Other jurisdictions have imposed liability on landlords, or have at least held a tenant's claim should survive summary judgment, in similar cases. See, e.g., Jane Doe v. Dominion Bank, 963 F.2d 1552, 1563 (D.C.Cir.1992) (reversing summary judgment for landlord and holding commercial landlord had duty to take reasonable measures to protect tenants from foreseeable criminal conduct and foreseeability question was for jury when tenant was raped in an unlocked, vacant office); Kendall v. Gore Properties, Inc., 236 F.2d 673, 678 (D.C.Cir.1956) (reversing directed verdict for landlord; tenant "had a right to expect that the landlord would not give up his set of keys to a stranger or so negligently fail to guard them that they might fall into the hands of one bent on mischief"); Ernst v. Parkshore Club Apartments Ltd. Partnership, No. 93C1207, 1993 W.L. 291689, at *3 (N.D.Ill.1993) (applying Illinois law; defendants held to duty to ensure employee did not use master key to gain access to apartment for illegal purposes); Cooke v. Allstate Management Corp., 741 F.Supp. 1205, 1210 (D.S.C.1990) (found under South Carolina law genuine issue of fact regarding whether landlord negligently handled ladder possibly used to enter apartment; summary judgment denied); Brock v. Watts Realty Co., 582 So.2d 438, 441 (Ala.1991) (revers-

ing summary judgment for landlord and holding city housing code imposed duty to maintain locks in satisfactory working condition; question of whether intruder entered tenant's apartment through rear door was question of fact for jury); *Cordes v. Wood,* 918 P.2d 76, 78–80 (Okla.1996) (reversing summary judgment for landlord and holding jury could conclude landlord had duty to protect tenants from criminal attack if attack was foreseeable and landlord had exclusive control over locks to tenant's apartment); *Dollison v. Mercy Servs. Corp.,* 7 Neb.App. 555, 584 N.W.2d 674, 678 (1998) (reversing directed verdict for landlord when plaintiff presented evidence a master key had been used to enter apartment to steal plaintiff's property); *Paterson v. Deeb,* 472 So.2d 1210, 1216–18 (Fla.Dist.Ct.App.1985) (holding landlord had mandatory statutory duty to provide adequate locks and keys to apartment building and to tenant's bathroom across hall from apartment; evidence that landlord had actual or constructive knowledge of similar criminal acts not required to prove foreseeability of intervening criminal act; court held foreseeability question did not go to question of duty but was a question of fact for jury on causation); *Center Management Corp. v. Bowman,* 526 N.E.2d 228, 231 (Ind.Ct.App.1988) (police found no evidence of forced entry and determined intruder used key).

Under facts similar to the present case, one court has said:

> In this case the second burglary was reasonably foreseeable. The defendants had notice of the first burglary and the probable method of entry by use of a key....
>
> The record reflects that the defendants acknowledged that twelve of their employees and an unknown number of employees of a carpet cleaning company enjoyed the use of the master keys. Defendants ignore the possibility that access to master keys could be greatly restricted and monitored for the protection of the tenants. By allowing such a

large group of persons unquestioned access to the master keys, the defendants effectively thwarted any attempt to determine who perpetrated the first burglary and to reduce the risk of further burglaries.

*Bowman,* 526 N.E.2d at 230. In *Rowe v. State Bank of Lombard,* 125 Ill.2d 203, 126 Ill.Dec. 519, 528–29, 531 N.E.2d 1358, 1367–68 (1988), the Illinois Supreme Court reversed a summary judgment in favor of the owner and operator of an office park. A former construction worker at the office park attacked two employees in their office, severely injuring one and killing the other. *Id.* at 521, 531 N.E.2d at 1360. The attacker probably entered their office with a master key. *Id.* at 523, 531 N.E.2d at 1362. The surviving victim alleged the landlord had breached a duty to protect the tenants from criminal attacks by failing to control the distribution of master and grand master keys and by failing to warn tenants that several keys were outstanding and unaccounted for. *Id.* at 522, 531 N.E.2d at 1361. The court held:

> [B]y retaining access to the individual office units and manufacturing master and grandmaster keys to facilitate entry, [the landlord] assumed a duty to take reasonable precautions to prevent unauthorized entries by individuals possessing those keys.

*Id.* at 528, 531 N.E.2d at 1367. The court held the plaintiffs had raised a genuine issue of material fact concerning whether a criminal attack was reasonably foreseeable under the circumstances. *Id.* at 531, 531 N.E.2d at 1370.

In *R.B.Z. v. Warwick Development Co.,* 681 So.2d 566, 567 (Ala.Civ.App.1996), tenants were raped in their apartment by a person who had access to a key. The court found a "special relationship" existed between the landlord and these tenants and held whether the crimes against the plaintiffs were foreseeable was a question

for the jury. *Id.* at 568. Summary judgment for the manager was reversed. *Id.*

We conclude, for the reasons discussed, that this defendant owed a duty of reasonable care to its apartment tenants to protect them from risk of harm. In doing so,

> we place the duty of taking protective measures guarding the entire premises and the areas peculiarly within the landlord's control against the perpetuation of criminal acts upon the landlord, the party to the lease contract who has the effective capacity to perform these necessary acts.

*Kline,* 439 F.2d at 482.

We conclude the court erred in ruling that defendant owed no duty of care under these circumstances. Whether the defendant breached its duty of care is, of course, a factual matter.

### V. *The Proximate–Cause Issue.*

The defendant's motion for summary judgment did not allege the lack of material fact on proximate cause, but the court found as a matter of law that proximate cause could not be established because the intruder's action was a superseding cause. We address this issue, even though it was not raised in the motion for summary judgment, because it will likely arise at trial.

The general rule is that

> [i]f the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.

Restatement (Second) of Torts § 449, at 482. Further,

> [t]he happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from

liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.

Restatement (Second) of Torts § 449 cmt. b, at 483.

In the present case, the plaintiff's claim is that the violent acts of the intruder were reasonably foreseeable. In such case,

> [o]bviously the defendant cannot be relieved from liability by the fact that the risk, or a substantial or important part of the risk, to which the defendant has subjected the plaintiff has indeed come to pass. Foreseeable intervening forces are within the scope of the original risk, and hence of the defendant's negligence. The courts are quite generally agreed that intervening causes which fall fairly in this category will not supersede the defendant's responsibility.

Prosser & Keeton § 44, at 303–04 (footnote omitted).

In *Stevens v. Des Moines Independent School District,* 528 N.W.2d 117 (Iowa 1995), a middle school student sued the school for failing to protect him from injury by another student. We held that the willful act of the aggressor could not be considered a superseding cause under the rule just discussed. *Id.* at 120. We conclude the district court erred in finding a superseding cause of injury as a matter of law.

### VI. *Conclusion.*

We conclude (1) the plaintiff's rule 179(b) motion was sufficient to toll the running of the plaintiff's appeal time; (2) the defendant is not an insurer of its tenants' safety, but it owed a duty of care to protect the plaintiff from reasonably fore-

seeable harm; (3) the defendant failed to establish the absence of a genuine issue of fact regarding foreseeability; and (4) the court erred in finding a lack of proximate cause as a matter of law.

We reverse and remand for further proceedings.

**REVERSED AND REMANDED.**